UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA FAYE MYERS,

       Plaintiff,                             CIVIL ACTION NO. 10-11818

       v.                                   DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF                   MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On May 4, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 9, 10).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on July 12, 2007, alleging that she became unable to work on March 1, 2005 (Tr. 8, 83-85). The claim was initially disapproved by the Commissioner on October 12, 2007 (Tr. 8, 51-54). Plaintiff requested a hearing and on August 18, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered the case *de novo*. At the hearing Plaintiff indicated that her alleged onset date should be adjusted to July

12, 2007, due to work activity prior to that date (Tr. 8). In a decision dated October 23, 2009, the ALJ found that Plaintiff was not disabled (Tr. 5-15). Plaintiff requested a review of this decision on October 23, 2009 (Tr. 4). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on March 5, 2010, denied Plaintiff's request for review (Tr. 1-3).

In light of the entire record in this case, I suggest that the ALJ failed to give controlling weight to medical evaluations by Plaintiff's treating physicians and/or failed to adequately explain his reasons for such action. Therefore, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for further proceedings consistent with the discussion below.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was born October 12, 1951, and was 57 years old at the time of the administrative hearing (Tr. 83). Plaintiff's relevant work history included work as an office manager/administrative assistant, corrections officer and Census Bureau worker (Tr. 14). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 12, 2007, the corrected alleged onset date (Tr. 10). At step two, the ALJ found that Plaintiff suffered from the following "severe" impairments: multi-level canal narrowing, most severe at the L4-L5 level; multi-level degenerative changes at the facet joints, especially at L4-L5 and L5-S1; left foraminal disc protrusion at L3-L4; subluxation of L4 over L5 and subtle subluxation of L5 over S1; and osteoarthritis of the right hip. *Id.* At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "skilled, light work ... with the following limitations: lifting

no more than twenty pounds occasionally and ten pounds frequently; no prolonged standing; walking limited to the equivalent of one block; and no climbing stairs" (Tr. 11). At step four, the ALJ found that Plaintiff could perform her previous work as an administrative assistant and as a Census Bureau worker because that work did not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 14). Based on this step four finding, the ALJ found that Plaintiff was not disabled; thus, the ALJ did not proceed to step five.

### B.     *Administrative Record*

#### 1.     **Plaintiff's Testimony and Statements**

Plaintiff testified that she started experiencing back pain in 1999 while in training at the academy, and that her pain continued for "the whole time" she worked as a corrections officer in New York. (Tr. 20-21, 29) In her disability application, Plaintiff indicated that she had "officially retired" from corrections' work in November 2006 "due to [her] health condition," but took a job working at a Macy's store in Michigan until leaving in July 2007, again due to her health condition (Tr. 97-98). At the hearing, Plaintiff testified that she left her job in November 2006 so she could move back to Michigan to care for her grandmother (Tr. 21). Plaintiff took pain medication sparingly, such as when the pain got "too bad" or she could not sleep (Tr. 22). She testified that her neurosurgeon had recommended surgery "to completely get rid of" her pain, but she is afraid because she is older and has thus far declined to have the surgery (Tr. 30).

Plaintiff testified that she had difficulty walking more than one block to the store (Tr. 23, 31). She could sit for 30 minutes at a time before she had to "shift[] around" and sit to one side or the other (Tr. 31-32). She cooked light meals and did the dishes at home, but standing for more than 15 minutes while bending caused pain and she had to take breaks (Tr. 24-26). She cleaned her house between one and three times a week, but then testified that she had to lie down for the rest of the day

(Tr. 24-25). Plaintiff also did her laundry, but had to kick the clothes down the stairs and wait for someone to bring them back up for her (Tr. 25). She testified that she could only pick up a gallon of milk (Tr. 26). She drove to church every Sunday, and spent most days reading or visiting with her mother next door (Tr. 27).

## 2. Medical Evidence

In May of 2002, Plaintiff saw doctors at Hudson River Community Health Center to establish care with them (Tr. 260). She complained of ongoing low back pain that sometimes went to her right hip (Tr. 250). At a follow-up appointment in June of 2002, Plaintiff reported that she was "working double shifts" (Tr. 260).

In July of 2004, Plaintiff returned to Hudson River for treatment for her "chronic" low back pain, which had increased over the last month, especially with increased physical activity (Tr. 231). Extra strength Tylenol relieved her pain (Tr. 231). Doctors recommended over-the-counter Motrin and suggested she seek an evaluation if her pain did not improve (Tr. 231). Plaintiff returned in November 2004 complaining of continued back pain that radiated to her shoulder and chest during her exercise class (Tr. 230). In May and June 2005, Plaintiff saw doctors at Hudson River several times reporting back pain and increased joint pain (Tr. 216). She returned in November 2005 reporting left flank and lower back pain that was worse when lying down, and reported some increased stress at work (Tr. 200).

On January 31, 2006, Plaintiff saw Robert Ferguson, M.D., for complaints of right leg pain that had worsened over the past two months (Tr. 274-75). Dr. Ferguson diagnosed hip pain and sciatica, and recommended a bone scan and MRIs (Tr. 274). The bone scan and MRI of Plaintiff's right femur and hip were normal, but noted some degenerative changes in Plaintiff's lower back (Tr. 269-70). An MRI of Plaintiff's lumbar spine showed mild stenosis (narrowing) at the L4-L5 level

with bilateral encroachment, greater on the right side than the left, and a bulging disc without encroachment at the L5-S1 level (Tr. 272). The radiologist, Ahmeed Khalid, M.D., opined that the MRI showed "multilevel degenerative disc disease/dessication" (Tr. 272).

Plaintiff referred herself to the Oakland Arthritis Center on June 13, 2006, reporting a "two-year history of low back pain" that radiated down her right leg, as well as some shoulder and arm issues (Tr. 280). Plaintiff was "on leave" from work as a corrections officer (Tr. 280). Doctors found no evidence of tenderness, swelling, or decreased strength or range of motion (Tr. 281). Plaintiff's reflexes and sensation were intact (Tr. 281). Plaintiff returned in July and August 2006 with continued lower back pain and right hip pain (Tr. 278-79).

In October 2006, Plaintiff reported that her left arm and hand had improved, but she still experienced intermittent joint swelling in her hands (Tr. 277). As a result, she had left her job and was looking for a new one (Tr. 277). Plaintiff still had low back and right leg pain "on occasion" as well (Tr. 277). Doctors recommended physical therapy (Tr. 277).

On November 16, 2006, Anuj Mittal, M.D., performed a routine check-up (Tr. 315-16). Plaintiff reported back pain in her left upper back, though Dr. Mittal found only "mild tenderness" and recommended Motrin and "observ[ation] for now" (Tr. 315).

On May 3, 2007, Plaintiff told Dr. Mittal that she had been experiencing leg pain for approximately two years with intermittent numbness (Tr. 291). Dr. Mittal recommended that Plaintiff exercise regularly, drink plenty of fluids, continue her medications, and get her previous renal insufficiency rechecked (Tr. 291). Plaintiff returned in late June 2007 with continued leg pain, and Dr. Mittal requested her previous medical records (Tr. 290).

On July 11, 2007, having reviewed Plaintiff's past medical records, Dr. Mittal diagnosed degenerative disc disease and herniated discs (Tr. 287). He prescribed pain medication and physical

therapy (Tr. 287; see also Tr. 286 (same in late July)).  Plaintiff reached her amended alleged onset date the next day (Tr. 18).

On October 6, 2007, Victor Cherfan, D.O., performed a consultative physical examination for the state agency (Tr. 318-20).  Plaintiff told Dr. Cherfan that she had difficulty lifting, climbing stairs, carrying laundry, or standing for long periods (Tr. 318).  She reported that she could carry 10 to 20 pounds (Tr. 318).  Plaintiff's hip flexion was decreased (Tr. 319-20).  Despite pain in her lower back, Dr. Cherfan found Plaintiff had a full range of motion (Tr. 319).  Plaintiff had a normal gait and did not use an assistive device to walk (Tr. 319).  Her straight leg raising test was negative, and she had no difficulty getting on or off the examination table or heel and toe walking (Tr. 319).  Dr. Cherfan found normal motor strength, sensation, and reflexes in her legs, and noted that Plaintiff walked without difficulty (Tr. 319-20).

On March 28, 2008, Dr. Khalid performed an MRI of Plaintiff's lower back and compared it to the February 2006 MRI that he had previously performed (Tr. 329).  He noted the degenerative problems at the L4-5 and L5-S1 levels (Tr. 329).

On September 5, 2008, Dr. Mittal completed a medical questionnaire stating that Plaintiff's back impairment prevented her from walking more than one block, climbing stairs, standing for prolonged periods, and all bending (Tr. 352).  He also indicated that Plaintiff could not do household chores (Tr. 352).  He opined that Plaintiff's condition had "worsened" and that her symptoms were now "much more severe" and would prevent her from working "at [that] time" (Tr. 353).

A CT scan of Plaintiff's lower back in December 2008 showed disc protrusions and narrowing and multilevel degenerative changes, including subluxation, especially at the L4-5 and L5-S1 levels, as well as a disc protrusion (Tr. 355-57).

### C. *Plaintiff's Claims of Error*

On appeal, Plaintiff alleges that the ALJ committed three errors: (1) the ALJ "exclud[ed] pertinent medical evidence," namely Dr. Khalid's opinion about Plaintiff's February 2008 MRI results, showing progressive, disabling and "new pathological changes" (Pl.'s Br. at 4-6); (2) the ALJ improperly "cited specific events" in his credibility finding (Pl.'s Br. at 5-6); and (3) the ALJ "violated the treating physician's rule by failing to consider the degree, severity, and intensity of Plaintiff's obvious spinal defects" in light of her allegations and Dr. Mittal's treating source opinion (Pl.'s Br. at 5).

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the

Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

C.    *Analysis and Conclusions*

An ALJ is generally required to give a treating physician's opinion controlling weight "if the opinion of the treating physician as to the nature and severity of a claimant's conditions is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record . . . ." *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (discussing the weight to be given a treating physician's opinion). Even when not given controlling weight, the opinions of treating physicians are entitled to deference. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." S.S.R. 96-2p (1996), 1996 S.S.R. LEXIS 9, at **9-10. This is so:

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.
>
> 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

-11-

If not accorded controlling weight, the ALJ must consider a series of factors in determining the weight to be accorded the treating physician's opinion, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Additionally, the ALJ "must provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.

After review of the record, I conclude that the decision of the ALJ did not give appropriate weight to Plaintiff's treating physicians and/or did not adequately explain why he departed from the diagnoses of those physicians, in particular the unequivocal opinion of Dr. Mittal that Plaintiff's back condition precluded her from all work. Indeed, the sole "inconsistency" cited by the ALJ for discounting the opinion of Dr. Mittal is that Dr. Mittal "opined that [Plaintiff] was not able to work full-time 'at least not at this time,'" yet also stated that Plaintiff's "pain was controlled with Darvocet" (Tr. 13-14). First of all, these statements are not necessarily inconsistent – Plaintiff's pain could be controlled with prescription medication, yet she could still be precluded from work. Secondly, this supposed "inconsistency" standing alone is not enough to reject Dr. Mittal's opinion wholesale. Simply put, the ALJ did not set forth "good reasons" for discounting the opinions of Plaintiff's treating physicians. Therefore, a remand is required so that the ALJ can, at a minimum, explain more fully why he rejected the opinions of Plaintiff's treating physicians.

It also appears that the ALJ's decision to deny benefits was largely based on Plaintiff's refusal to undergo back surgery (Tr. 13). However, in order to support a denial of benefits, the

evidence must show that prescribed treatment would not only improve the claimant's health, but would restore the claimant's ability to perform substantial gainful activity. *See Harris v. Heckler*, 756 F.2d 431, 435-436 (1985); *Fraley v. Sec'y of Health & Human Serv's.*, 733 F.2d 437, 440 (1984). While Plaintiff testified that her neurosurgeon recommended surgery, the record is devoid of any evidence that the proposed surgery would **restore Plaintiff's ability to work**. *See* 20 C.F.R. § 404.1530(a). In addition, it appears that surgery was only a suggested course of treatment, rather than a prescribed course of treatment. *See Young v. Califano*, 633 F.2d 469, 472-73 (6th Cir.1980). There is simply no evidence – and certainly none cited by the ALJ – that Plaintiff's unwillingness to follow a recommendation to undergo surgery constituted a willful failure to follow prescribed treatment. "It is not [Plaintiff's] burden to undergo any and all surgical procedures suggested by [her] physician lest [s]he is barred from receiving disability benefits." *Fraley, supra*, 733 F.2d at 440. Furthermore, where a claimant's treating physician considers the claimant's decision not to undergo prescribed treatment to be a reasonable decision, good cause exists for the failure to receive the treatment. *See Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). There is no indication in the record that Plaintiff's treating physicians considered her decision to forgo surgery to be an unreasonable one.

Finally, the undersigned is not convinced that the ALJ appropriately assessed Plaintiff's credibility. For instance, the ALJ found that Plaintiff "has provided inconsistent information" in so much as Plaintiff "initially reported that she stopped working in 2006 due to her health condition...[h]owever, at the hearing, she testified that she returned to Michigan at that time to help care for her dying grandmother" (Tr. 12). The ALJ found these statements conflicting, and concluded that Plaintiff "generally may not be entirely reliable." *Id.* These statements do not appear to the undersigned to be inconsistent. It is entirely plausible that Plaintiff was unable to continue

competitive employment, and yet decided to leave New York and return to Michigan to "help" care for her dying grandmother. In any event, the undersigned finds that the ALJ's opinion is not supported by substantial evidence and that this matter should be remanded for a new hearing.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that this case be **REMANDED** for further proceedings addressing whether the treating physician's opinion should be given controlling weight and, if not, the reasons for whatever weight it is given.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless,

by motion and order, the page limit is extended by the court.  The response shall address  each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>Mark A. Randon<br>United States Magistrate Judge

Dated:  February 18, 2011

*CERTIFICATE OF SERVICE*

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 18, 2011.*

*s/Melody R. Miles*<br>*Case Manager to Magistrate Judge Mark A. Randon*<br>*(313) 234-5542*